IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERBERT FLORES-TORRES,<br><br>Petitioner,<br><br>v.<br><br>MICHAEL MUKASEY, United States Attorney Generaly, MICHAEL CHERTOFF, Secretary of the Department of Homeland Security, NANCY ALCANTAR, Immigration and Customs Enforcement Detention and Removal Operations Field Office Director, and EDWARD FLORES, Chief of Corrections of Santa Clara County Jail,<br><br>Respondents. | No. C 08-01037 WHA<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

In this immigration action, petitioner Herbert Flores-Torres claims to be unlawfully detained under the authority of the Department of Homeland Security ("DHS"). He claims that the United States Immigration and Customs Enforcement ("ICE") lacks statutory authority to detain him and his detention violates the Non-Detention Act and his due process rights. He seeks habeas relief pursuant to 28 U.S.C. 2241. Respondents Michael Mukasey, Michael Chertoff, Nancy Alcantar, and Edward Flores counter that the Court lacks subject-matter jurisdiction, that petitioner failed to exhaust his administrative remedies, and that petitioner received appropriate individualized custody review. For the reasons stated below, the petition for writ of habeas corpus is **DENIED**.

**STATEMENT**

Mr. Flores-Torres was born in El Salvador in 1978. His mother was unmarried at the time. Two years later, his mother moved to Los Angeles, California, and left petitioner in the care of his maternal grandmother. His mother regularly sent money for Mr. Flores-Torres' care. In January 1986, Mr. Flores-Torres joined his mother in Los Angeles. He became a Lawful Permanent Resident of the United States in November 1993. In September 1995, when petitioner was seventeen, his mother became a naturalized United States citizen.

On February 13, 2002, Mr. Flores-Torres was convicted of second-degree burglary in violation of California Penal Code Section 459(p). Two weeks later, on February 25, 2002, he was also convicted of possessing a controlled substance in violation of the California Health & Safety Code Section 11377(a)(p).

In December 2003, the ICE filed an immigration detainer with the California Department of Corrections ("CDC"). In other words, the CDC was advised that the ICE had begun an investigation to determine whether Mr. Flores-Torres was subject to removal from the United States. The ICE then issued a notice to Mr. Flores-Torres in July 2004 that he would be detained in the custody of the Immigration and Naturalization Service. On the basis of the foregoing, the ICE charged petitioner with removability, under 8 U.S.C. 1227(a)(2)(A)(iii), as an alien convicted of a commercial burglary for which the term of imprisonment was for three years. The next month, an immigration judge denied his request for a release for custody. In September 2004, with the assistance of counsel, Mr. Flores-Torres raised a claim of derivative citizenship.[1]

In November 2004, the ICE filed more charges of removability. It claimed removability on the ground that petitioner was an alien who had been convicted of an offense relating to a controlled substance, pursuant to 8 U.S.C. 1227(a)(2)(B)(i), and of illicit trafficking in a controlled substance, pursuant to 8 U.S.C. 1227(a)(2)(A)(iii). The next month, the immigration

---

[1] Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act is also codified as 8 U.S.C. 1227(a)(2)(A)(iii).

2

judge granted petitioner relief by cancelling the removal pursuant to 8 U.S.C. 1229b(a), which provides (emphasis added):

> Cancellation of removal for certain permanent residents — The Attorney General may cancel removal in the case of an *alien* who is inadmissible or deportable from the United States if the alien — (1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony.

Despite having had his counsel raise the claim of derivative citizenship earlier that year, petitioner did not challenge the immigration judge's finding that he was an alien. He did not seek an appeal with the Board of Immigration Appeals ("BIA"). Nor did he file an application for a certificate of citizenship. Mr. Flores-Torres was released on parole.

A mere three months later, while petitioner was still on active parole, police officers caught Mr. Flores-Torres with an unregistered handgun. The probation officer's report noted that he was "known by law enforcement as an active street gang member" (Resp. Exh. 10). In June 2005, petitioner was then convicted of possession of a firearm by a felon in violation of California Penal Code Section 12021(a)(1).

Petitioner's case came to the attention of an ICE agent pursuant to his renewed incarceration at Soledad Prison. The ICE agent recommended that Mr. Flores-Torres be subject to removal as an alien convicted of an aggravated felony after entry. The ICE filed a detainer with the prison and issued petitioner a notice to appear. The notice informed Mr. Flores-Torres of the factual allegations made against him: that he was not a citizen of the United States, that he was admitted into the United States as an immigrant, and that he was convicted of possession of a firearm by a felon with two priors. The notice further stated, "On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law: Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony" (Resp. Exh. 12). The ICE also notified petitioner that it had determined that petitioner should be detained in the custody of the INS.

3

In October 2006, Mr. Flores-Torres entered into ICE custody and has been there ever since. The next month, an immigration judge denied his request for a change in custody status. Petitioner argued that he was a United States citizen. In April 2007, the immigration judge found that "the government is correct in stating that [the citizenship issue] was fully and fairly litigated during the prior proceedings and that *res judicata* applies to bar relitigation of the claim." The immigration judge nonetheless made an independent review of the record "[d]ue to the importance of the allegations by [sic] raised respondent and the alleged potential for removal of a United States citizen." He concluded that Mr. Flores-Torres "did not acquire United States citizenship because he was legitimized by his father in El Salvador . . . Her[e], the respondent was legitimized in El Salvador while he, his mother and his father were residing in El Salvador. Respondent's father could not undo that act by distancing himself from respondent once the family came to California" (Resp. Exh. 16). Petitioner was therefore ordered to be removed back to El Salvador.

Mr. Flores-Torres appealed the decision. In July 2007, the BIA affirmed the decision of the immigration judge. The BIA stated that "evidence of foreign birth gives rise to a rebuttable presumption of alienage, shifting the burden to the respondent to come forward with evidence to substantiate his citizenship claim. Mr. Flores-Torres did not dispute that he was born in El Salvador. The BIA agreed with the immigration judge that Mr. Flores-Torres was legitimated by his father under Salvadoran law and he could not derive United States citizenship from his mother's naturalization.

In January 2008, the BIA granted petitioner's motion to reopen. Mr. Flores-Torres claimed ineffective assistance of counsel in his prior proceedings and that he derived United States citizenship from his mother. The BIA concluded that the record was insufficient for it to determine whether the changes brought about by changes in the El Salvador law in 1983 automatically legitimated children born out of wedlock. The BIA therefore remanded the record back to the immigration judge to determine "whether article 279 of the Civil Code of El Salvador, which provided a means of legitimation for children born out of wedlock, remains in effect" (Resp. Exh. 20).

4

In February 2008, Mr. Flores-Torres filed a petition for writ of habeas corpus on the grounds that: (i) the ICE had no statutory authority to detain him because he had raised a substantial claim of citizenship; (ii) respondents' actions violated the Non-Detention Act; and (iii) he had been detained without congressional authority and the detainment therefore deprived him of his due process rights.

The immigration court issued a notice setting hearings for petitioner's bond and custody issues on March 12, 2008, and April 8, 2008. Mr. Flores-Torres submitted a brief supporting his arguments against custody. On March 12, 2008, petitioner attended the hearing. The hearing was then reset to March 20, 2008, to give the immigration judge the opportunity to issue a decision on the custody matter. On March 20, 2008, counsel for Mr. Flores-Torres requested that the immigration judge make a determination on custody. The immigration did not make such a determination, stating that custody issues and the merits of Mr. Flores-Torres' derivative-citizenship claim were inextricably intertwined. Counsel objected to the immigration court's consolidation of the removal hearing with the custody hearing. The custody hearing set for April 2008 was then continued at petitioner's request, so petitioner had the opportunity to respond to a Library of Congress report submitted by the ICE. The immigration judge granted petitioner until May 22, 2008, to brief his position and provided the government attorney with two weeks to reply.

**ANALYSIS**

**A.   IS PETITIONER'S NATIONALITY CLAIM PROPERLY BEFORE THIS COURT?**

Mr. Flores-Torres argues that respondents have not provided any statutory authority for detaining him in the course of the removal proceedings. According to the notice to appear that was issued to petitioner, he was removable pursuant to 8 U.S.C. 1227(a)(2)(A)(iii), which provides: "Any alien who is convicted of an aggravated felony at any time after admission is deportable." Because there is no final removal order yet, respondents relied upon the mandatory-detention provision, 8 U.S.C. 1226(c)(1)(B), which states, "The Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." An alien

being held under the mandatory-detention provisions may request a *Joseph* hearing, which provides the detainee "the opportunity to offer evidence and legal authority on the question whether [ICE] has properly included him within a category that is subject to mandatory detention." *Bermudez v. ICE*, 2008 WL 269481, *2 (N. D. Cal. 2008) (Walker, J.). Mr. Flores-Torres claims that the ICE lacks proper jurisdiction over him because the mandatory-detention provision only applies to aliens and not to "individuals with colorable claims to citizenship" (First Amd. Pet. at ¶ 19).[2]

Under the REAL ID Act of 2005, the United States Courts of Appeals have exclusive jurisdiction to review orders of removal for aliens. It states, in relevant part:

> If the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.

8 U.S.C. 1252(b)(5)(A). If, on the other hand, genuine issues of fact exist concerning the nationality claim, the statute provides a different procedure:

> If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28.

8 U.S.C. 1252(b)(5)(B). *See also Baeta v. Sonchik*, 273 F.3d 1261, 1263 (9th Cir. 2001).

Here, there are no genuine issues of fact that exist concerning the nationality claim. Neither party disputes that petitioner was born out of wedlock in El Salvador, that his mother moved to the United States, that petitioner joined his mother in 1986, that he became a Lawful Permanent Resident in 1993, or that his mother became a naturalized citizen when petitioner was seventeen years old. The main question of this case hinges on whether or not, under the law, he qualifies for derivative citizenship. Because there are no genuine issues of material fact

---

[2] The *Joseph* hearing here was the custody hearing originally set for March 12, 2008, before the immigration court.

6

about Mr. Flores-Torres' nationality, this order holds that subject-matter jurisdiction is lacking with respect to his claim that the ICE lacked statutory authority to detain him. The Court of Appeals is the proper forum for this claim.

After a nationality claim has been improperly brought in district court, the next question is whether the action should be transferred to the Court of Appeals pursuant to 28 U.S.C. 1631 (transfer to cure for want of jurisdiction). According to 28 U.S.C. 1631:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

"In the immigration context, '[t]he transfer statute authorizes us to transfer these cases to ourselves if: (1) we would have been able to exercise jurisdiction on the date that they were filed in the district court; (2) the district court lacked jurisdiction over the cases; and (3) the transfer is in the interests of justice.'" *Baeta*, 273 F.3d at 1264.

Here, transfer is not appropriate because the first requirement has yet to be satisfied. The BIA remanded the case back to the immigration judge, and both sides agree that there is no final removal order. The Ninth Circuit would not have been able to exercise jurisdiction on the date petitioner filed his case in district court due to the lack of a final removal order. Accordingly, there is a lack of subject-matter jurisdiction with respect to this claim, and it cannot be transferred.[3]

---

[3] Mr. Flores-Torres further argues that respondents have detained him in violation of the Non-Detention Act, which provides that "[n]o citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress." 18 U.S.C. 4001. Because he has a "colorable citizenship claim," he is properly before this Court and is entitled to relief, he says. Petitioner relies on the following cases: *Ng Fung Ho v. White*, 259 U.S. 276 (1922) (finding that a person with a claim of citizenship cannot be arrested and deported before judicial determination of claims); *Rivera v. Ashcroft*, 394 F.3d 1129, 1136 (9th Cir. 2005) (holding that petitioner's "colorable citizenship claim" gave him the right to district court review), and *Frank v. Rogers*, 253 F.2d 889, 890 (D.C. Cir. 1958) (respondents' fundamental assertion of jurisdiction over petitioner is in question as he had a meritorious citizenship claim). This argument is misplaced, however. These decisions all *predate* the REAL ID Act, which included the jurisdiction-stripping provision. *See Iasu v. Smith*, 511 F.3d 881 (9th Cir. 2007). The derivative-citizenship issue therefore belongs in another forum, the Court of Appeals.

### B. HAS PETITIONER BEEN HELD FOR AN INDEFINITE, PROLONGED PERIOD OF TIME?

The REAL ID Act, however, does not eliminate district court jurisdiction over challenges to detention that are independent of removal proceedings. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir. 2006). Petitioner says that his detention has been unconstitutionally indefinite and prolonged.[4]

Mr. Flores-Torres has been in custody for approximately twenty months. He claims that his detention is excessive in violation of the Non-Detention Act and his due process rights. The Ninth Circuit concluded "that the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period. Rather . . . we conclude that the statutes at issue permit detention only while removal remains reasonably foreseeable. Further . . . we conclude that after a presumptively reasonable six-month detention, 'once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.'" *Nadarajah*, 443 F.3d at 1078. The petitioner in *Nadarajah* had been detained for nearly five years.[5]

It is true that Mr. Flores-Torres' detention has exceeded the presumptively reasonable six-month period. "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it had been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 207 (2001).

---

[4] Respondents say that petitioner has not properly exhausted his administrative remedies. An alien does not have to exhaust his administrative remedies in order to bring a habeas petition challenging the indefinite length of his detention. *Marquez v. INS*, 346 F.3d 892, 896 (9th Cir. 2003). Assuming *arguendo* that petitioner does not have to exhaust his administrative remedies, this order still finds that Mr. Flores-Torres' detention was not unconstitutionally long and indefinite. The exhaustion argument therefore need not be addressed.

[5] *See also Demore v. Kim*, 538 U.S. 510, 513 (2003) ("Congress, justifiably concerned with evidence that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the *brief period necessary* for their removal proceedings") (emphasis added); *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) ("Despite the substantial powers that Congress may exercise in regard to aliens, it is constitutionally doubtful that Congress may authorize imprisonment of this duration [over two years and eight months] for lawfully admitted resident aliens who are subject to removal").

8

Here, Mr. Flores-Torres' detention was not as long as the thirty-two month period discussed in *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005). Nor was it as long as the five years in *Nadarajah*.

This order finds that petitioner has not provided good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. In *Zadvydas*, for example, the petitioners could not be removed because no country would accept them. There, the detention was "potentially permanent." In the instant action, Mr. Flores-Torres has continued to engage in crime upon release and constitutes a threat to society. He has not shown that there is "no significant likelihood of removal in the reasonably foreseeable future." Mr. Flores-Torres has made no showing of any unreasonable delay by the government. A hearing was continued at the request of petitioner. Furthermore, petitioner's removal order is not yet final, and once it becomes final, there will be a set removal period pursuant to 8 U.S.C. 1231. For these reasons, this order finds that Mr. Flores-Torres has not been detained for an unreasonable amount of time.

### C. HAS PETITIONER DUE PROCESS RIGHTS BEEN VIOLATED?

Mr. Flores-Torres finally argues that his due process rights under the Fifth Amendment were violated because the immigration judge denied his right to a *Joseph* hearing. On March 12, 2008, a *Joseph* hearing had been scheduled. The immigration judge then collapsed his *Joseph* hearing with the hearing regarding the merits of petitioner's derivative-citizenship claim. Consequently, petitioner asserts that he did not receive the individualized review provided by a *Joseph* hearing.

Petitioner's argument has no merit. He has had numerous hearings before the immigration court and BIA. The BIA granted his motion to reopen and address his ineffective-assistance-of-counsel and derivative-citizenship claims. He provides no authority whatsoever that consolidating a custody hearing and a hearing on the derivative-citizenship claim violate Due Process. This order is not persuaded that his constitutional rights were violated in this regard.

**CONCLUSION**

Because there is a lack of jurisdiction with respect to petitioner's nationality claim and petitioner's detention was not prolonged and indefinite, the petition for habeas corpus is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 22, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE