IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERBERT FLORES-TORRES,<br><br>Petitioner,<br><br>v.<br><br>MICHAEL MUKASEY, United States Attorney Generaly, MICHAEL CHERTOFF, Secretary of the Department of Homeland Security, NANCY ALCANTAR, Immigration and Customs Enforcement Detention and Removal Operations Field Office Director, and EDWARD FLORES, Chief of Corrections of Santa Clara County Jail,<br><br>Respondents. | No. C 08-01037 WHA<br><br>**TENTATIVE ORDER REGARDING PETITION FOR HABEAS CORPUS** |

The following is a tentative order denying the petition for writ of habeas corpus filed by Herbert Flores-Torres. Both sides may submit a brief no later than **JULY 27, 2009, AT NOON**, to present any reasons why this tentative order should not be made final. Thereafter, both sides may submit any brief in reply thereto, no greater than ten pages, by **JULY 30, 2009, AT NOON**.

**INTRODUCTION**

In this petition for writ of habeas corpus, petitioner Herbert Flores-Torres challenges his confinement by Immigration and Customs Enforcement during the pendency of his removal proceedings. He has asserted in his removal proceedings that he cannot be removed because he is actually a United States citizen. In this habeas petition, he contends that ICE has no authority to detain him prior to the resolution of his citizenship claim because, he argues, the immigration

1  laws do not permit immigration authorities to detain individuals with a "serious" or non-
2  frivolous claim to citizenship. A prior order denied the petition on the grounds, *inter alia*, that
3  the Court lacked subject-matter jurisdiction over the claim under to the REAL ID Act.

4  The Ninth Circuit reversed. It concluded that the REAL ID Act does *not* preclude
5  district-court jurisdiction in this instance because petitioner challenges only his detention *during*
6  the removal proceedings, not any final order of removal. The Ninth Circuit did not intimate a
7  vew on whether petitioner's citizenship claim was colorable or whether colorability should even
8  be the true test.

9  During the pendency the Ninth Circuit appeal, however, the removal proceedings had
10 continued to advance in the immigration courts. The immigration judge had rejected
11 petitioner's citizenship claim and, just days after the Ninth Circuit issued its order herein, the
12 Board of Immigration Appeals rejected petitioner's appeal of the citizenship claim. A petition
13 for review of the BIA's decision is currently pending with the Ninth Circuit.

14 The habeas petition must be denied. Petitioner's citizenship claim has been fully
15 litigated and decided in the immigration courts. Petitioner is therefore precluded from re-
16 litigating the same issue in his habeas petition. Moreover, petitioner's claim that ICE lacks
17 authority to detain individuals with a "colorable" claim to citizenship prior to adjudication of
18 the citizenship claim is now moot. Petitioner has received the sought-after adjudication and his
19 citizenship claim has been rejected. He no longer has a citizenship claim, colorable or
20 otherwise. For the following reasons, the petition for habeas corpus will therefore be **DENIED**.[1]

21                              **STATEMENT**

22 Petitioner was born in 1978 in El Salvador. Petitioner's father, Juan Flores, and his
23 mother, Rosa Torres, were unmarried when petitioner was born. Petitioner's mother arrived in

---

[1] Petitioner had also raised a challenge to the length of his mandatory detention without receiving an individualized bond hearing, but as the Ninth Circuit recognized, that claim is also now moot. Petitioner was originally detained under the mandatory detention provision, which states: "[t]he Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. 1226(c)(1)(B). Petitioner since received an individualized bond hearing and is currently being held under the general detention provision rather than the mandatory detention provision, rendering the claim moot. 8 U.S.C. 1226(a).

2

1  the United States in 1981 and has lived in Los Angeles ever since. Petitioner initially remained
2  with his grandmother in El Salvador but entered the United States (without inspection) in 1986.

3  Petitioner's mother obtained temporary lawful status in the United States through an
4  amnesty legalization program in April 1988. She became a naturalized United States citizen in
5  1995, when petitioner was seventeen years old. Petitioner's mother filed a visa application for
6  petitioner in 1990, and petitioner himself became a legal permanent resident in 1993. Petitioner
7  alleges that, when his mother was naturalized, he obtained derivative citizenship by way of a
8  since-repealed provision of the immigration laws. *See* 8 U.S.C. 1432(a) (2003).[2]

9  This habeas petition arose in the course of petitioner's second removal proceedings. His
10 first removal proceedings arose from two convictions in 2002. In February 2002, petitioner was
11 convicted of second-degree burglary in violation of California Penal Code § 459(p). Also in
12 February 2002, petitioner was convicted of possession of a controlled substance in violation of
13 California Health & Safety Code § 11377(a)(p). He received a sentence of three years in
14 prison. In late 2003, ICE issued an immigration detainer with the California Department of
15 Corrections and, in 2004, charged petitioner with removability for the two offenses. The
16 immigration judge, however, granted petitioner relief from removability in the form of
17 cancellation of removal. 8 U.S.C. 1226.

18 On June 2, 2005, while still on parole for these offenses, petitioner was convicted yet
19 again, this time for possession of a firearm by a felon in violation of California Penal Code §
20 12021(a)(1). The probation report stated that petitioner was known by law enforcement to be
21 an active gang member (Ans. Exh. 10). In October 2006, while petitioner was incarcerated for
22 the offense, ICE filed an immigration detainer with the prison and placed petitioner in removal

---

[2] Prior to repeal in 2003, children born to alien parents outside of the United States obtained automatic citizenship upon the naturalization of the mother — if the child was born out of wedlock, the paternity of the child had not been established by legitimation, and such naturalization took place while such child was under the age of eighteen, among other conditions. 8 U.S.C. 1432(a) (2003). If the paternity of the child *had* been established by legitimation, however, then the alien obtained derivative citizenship only if *both* the biological mother and father were naturalized before the child's eighteenth birthday. *Ibid*. Petitioner's father was not naturalized. Therefore, the citizenship claim hinged on whether paternity had been established by legitimation under El Salvadorian law.

3

1  proceedings, charging him with being an alien convicted of an aggravated felony. 8 U.S.C.
2  1227(a)(2)(A)(iii). Petitioner has been in CIS custody ever since.

3  Petitioner filed a motion with the immigration judge to terminate the removal
4  proceedings on the basis of petitioner's claim to derivative United States citizenship as well as a
5  claim that his counsel during the 2002 removal proceedings had been ineffective. ICE asserted,
6  and the immigration judge found, however, that the issue of petitioner's alienage had been
7  litigated in the 2004 removal proceedings and therefore *res judicata* barred petitioner's claim of
8  United States citizenship. Petitioner appealed to Board of Immigration of Appeals, and in July
9  2007 the BIA denied the appeal.

10  In October 2007, petitioner moved before the BIA to reopen the proceedings claiming
11  ineffective assistance of his two attorneys at each of the two removability proceedings for
12  failing properly to pursue the derivative-citizenship claim. The BIA granted the motion,
13  vacated its July 2007 decision and remanded the matter to the immigration judge with
14  instructions to address whether a change in El Salvadorian law had affected petitioner's claim to
15  derivative citizenship.[3]

16  In February 2008, as the immigration case was remanded to the immigration judge,
17  petitioner filed this federal petition for writ of habeas corpus to challenge his detention during
18  the pendency of the removal proceedings. He filed an amended petition in March 2008. He
19  argued that, because he has raised a "non-frivolous" or "substantive" claim to United States
20  citizenship, ICE had no authority to detain prior to proper adjudication of his *prima facie*
21  citizenship claim.

22  A May 2008 order denied the habeas petition. It ruled that this Court lacked subject-
23  matter jurisdiction over petitioner's nationality claim. Under the REAL ID Act of 2005, the
24  federal appellate courts have exclusive jurisdiction over final orders of removal. Where an
25  individual asserts a claim to United States citizenship, the Act provides that the appellate court
26  shall hear the challenge if it finds that no genuine issues of material fact about the nationality

---

[3] The BIA instructed the IJ to address "whether article 279 of the Civil Code of El Salvador, which provides a means of legitimation of children born out of wedlock, remains in effect."

4

1    claim exist, but if the appellate court finds a genuine issue of material fact on the issue, it shall
2    transfer the petition to the district court for a new hearing on the nationality issue. 8 U.S.C.
3    1252(b)(5)(A)–(B). The May 2008 order found that petitioner's citizenship claim was
4    intertwined with the removal proceedings and posed no genuine issues of material fact and,
5    therefore, review thereof was available only via a final order of removal.

6    The Ninth Circuit reversed. It ruled that district courts do have jurisdiction to hear the
7    merits of the citizenship claim on a habeas petition where it challenges detention pending
8    resolution of removal proceedings, rather than a final order of removal. It remanded the habeas
9    petition to address petitioner's claim that his detention during the pendency of his removal
10   proceedings was unlawful due to his claim to citizenship.

11   In the meantime, however, the immigration courts had forged ahead. During the
12   pendency of the federal appeal, the immigration judge ruled that petitioner did *not* derive United
13   States citizenship from his mother and, just days after the Ninth Circuit issued its order herein,
14   the BIA affirmed that decision. Flores-Torres has petitioned the Ninth Circuit for review of the
15   IJ and BIA's decisions and his petition for review is currently pending before the Ninth Circuit.

**ANALYSIS**

17   In this federal habeas petition, Flores-Torres contends that ICE lacks power to detain
18   him due to his claim to citizenship. The immigration laws permit ICE to detain only "aliens,"
19   not United States citizens: "an alien may be arrested and detained pending a decision on
20   whether the alien is to be removed from the United States." 8 U.S.C. 1226(a). Petitioner
21   contends that he is a citizen, not an alien. He further contends that ICE not only lacks authority
22   to detain United States citizens but also lacks authority to detain individuals with a "colorable"
23   or "substantial" claim to citizenship.

24   We have an unusual and potentially awkward procedural situation. The Ninth Circuit
25   has now held that habeas review is an alternate route by which aliens may adjudicate their
26   citizenship claim prior to resolution of their removal proceedings. The statute, however,
27   contemplates that citizenship claims will be adjudicated by the agency and then reviewed by the
28   circuit court. We have now the spectre of two parallel tracks and the possibility that the same

issue — a derivative citizenship claim — can be litigated twice in separate proceedings, leading to two potentially contradictory decisions and separate appeals. Conceivably, different outcomes could result depending on the quality of the records and which matter reached an appellate panel first.

In the instant case, however, the problem has receded. As stated, the immigration courts have now fully litigated petitioner's citizenship claim. Petitioner has now received the sought-after adjudication of the claim and was found to be an alien rather than a United States citizen. The order of the BIA dismissing petitioner's appeal of the derivative-citizenship claim constituted the final judgment on the issue. Petitioner is therefore precluded from re-litigating the same issue — his claim to derivative citizenship — in his habeas petition. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 333–37 (1979).

In addition, petitioner's claim that he must be released during the pendency of his removal proceeding because he has a non-frivolous or "colorable" claim to citizenship is now moot. Petitioner asserts that he is a United States citizen and contends that "ICE has no statutory authority to detain petitioner prior to a proper adjudication of his *prima facie* citizenship claim" (Br. at 4). With his citizenship claim fully litigated and decided, petitioner no longer has a colorable claim to citizenship. He has received the sought-after relief. The claim is therefore moot.

## CONCLUSION

For all of the above-stated reasons, the petition for habeas corpus is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 10, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6