1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7

8         FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

HERBERT FLORES-TORRES,

10          Petitioner,                              No. C 08-01037 WHA

11    v.

12  MICHAEL MUKASEY, United States Attorney          **ORDER DENYING**
    General, MICHAEL CHERTOFF, Secretary of          **PETITION FOR**
13  the Department of Homeland Security, NANCY        **HABEAS CORPUS AND**
    ALCANTAR, Immigration and Customs                 **ORDERING PARTIES**
14  Enforcement Detention and Removal Operations      **TO FILE TRIAL BRIEFS**
    Field Office Director, and EDWARD FLORES,
15  chief of Corrections of Santa Clara County Jail,

16          Respondents.
                                                    /
17  ─────────────────────────────────────────

18        The following is an order **DENYING** the petition for writ of habeas corpus filed by Herbert

19  Flores-Torres.  The July 10 tentative order is hereby **WITHDRAWN**.  A judgment will not be

20  entered because petitioner's citizenship claim will be adjudicated in the consolidated citizenship

21  appeal transferred to this Court.  With respect to the trial set for November 5, 2009, on the

22  citizenship question, counsel should file trial briefs up to 25 pages by **OCTOBER 26, 2009,** AT

23  NOON, with replies up to fifteen pages by **OCTOBER 29, 2009,** AT NOON.

24                            **INTRODUCTION**

25        In his petition for writ of habeas corpus, Herbert Flores-Torres challenges his confinement

26  by Immigration and Customs Enforcement during the appeal of his final order of removal.

27  He had asserted in his removal proceedings that he cannot be removed because he is actually a

28  United States citizen.  In this habeas petition, he contends that ICE has no authority to detain him

**United States District Court**
For the Northern District of California

prior to the resolution of his citizenship claim because, he argues, the immigration laws do not permit immigration authorities to detain individuals with a "serious" or non-frivolous claim to citizenship. A prior order denied the petition on the grounds, *inter alia*, that the Court lacked subject-matter jurisdiction over the claim under to the REAL ID Act. The Ninth Circuit reversed and remanded the case to this Court. It concluded that the REAL ID Act does *not* preclude district court jurisdiction in this instance because petitioner challenges only his detention *during* the removal proceedings, not any *final* order of removal.

During the pendency of the Ninth Circuit appeal, however, the removal proceedings had continued to advance in the immigration courts. The immigration judge had rejected petitioner's citizenship claim and, just days after the Ninth Circuit issued its order herein, the Board of Immigration Appeals rejected petitioner's appeal of the citizenship claim. A *final* order of removal has been issued. Petitioner, however, has appealed this administrative order of removal to the Ninth Circuit. The Ninth Circuit has stayed its proceedings and has transferred the issue of petitioner's citizenship to the undersigned for fact-finding and decision making. So, this Court now has jurisdiction over two separate but related proceedings: the original habeas claim and the transfer for fact-finding. These proceedings have been consolidated in this action.

Petitioner is still in ICE custody and wants to be released. Petitioner's habeas corpus petition is, therefore, treated by the undersigned as a petition for release pending completion of the appeal at the Ninth Circuit. By way of background, on July 10, 2009, a "tentative order" regarding the petition for habeas corpus was issued. The suggested order held that petitioner's request for habeas relief be **DENIED** and invited the parities to submit briefs presenting reasons why the tentative order should not be made final. The Court has reviewed the parties' briefs. The July 10 order is now **WITHDRAWN**, however, the petition must still be **DENIED**. Petitioner's citizenship claim will be adjudicated in the November trial.

### STATEMENT

This habeas petition arose in the course of petitioner's second removal proceedings. His first removal proceedings arose from two convictions in 2002. In February 2002, petitioner was convicted of second-degree burglary in violation of California Penal Code § 459(p). Also in

United States District Court

For the Northern District of California

1    February 2002, petitioner was convicted of possession of a controlled substance in violation of

2    California Health & Safety Code § 11377(a)(p).  He received a sentence of three years in prison.

3    In late 2003, ICE issued an immigration detainer with the California Department of Corrections

4    and, in 2004, charged petitioner with removability for the two offenses.  The immigration judge,

5    however, granted petitioner relief from removability in the form of cancellation of removal.

6    8 U.S.C. 1226.

7        On June 2, 2005, while still on parole for these offenses, petitioner was convicted yet

8    again, this time for possession of a firearm by a felon in violation of California Penal Code

9    § 12021(a)(1).  The probation report stated that petitioner was known by law enforcement to be

10   an active gang member (Ans. Exh. 10).  In October 2006, while petitioner was incarcerated for

11   the offense, ICE filed an immigration detainer with the prison and placed petitioner in removal

12   proceedings, charging him with being an alien convicted of an aggravated felony.  8 U.S.C.

13   1227(a)(2)(A)(iii).  Petitioner has been in CIS custody ever since.

14       Petitioner filed a motion with the immigration judge to terminate the removal proceedings

15   on the basis of petitioner's claim of derivative United States citizenship as well as a claim that

16   his counsel during the 2002 removal proceedings had been ineffective.  Petitioner alleges that,

17   when his mother was naturalized, he obtained derivative citizenship by way of a since-repealed

18   provision of the immigration laws.  *See* 8 U.S.C. 1432(a) (2003).[1]  ICE asserted, and the

19   immigration judge found, however, that the issue of petitioner's alienage had been litigated in the

20   2004 removal proceedings and therefore *res judicata* barred petitioner's claim of United States

21   citizenship.  Petitioner appealed to Board of Immigration of Appeals, and in July 2007 the BIA

22   denied the appeal.

23

24   ──────────────

25       [1] Prior to repeal in 2003, children born to alien parents outside of the United States obtained automatic citizenship upon the naturalization of the mother — if the child was born out of wedlock, the paternity of the child had not been established by legitimation, and such naturalization took place while such child was under

26   the age of eighteen, among other conditions.  8 U.S.C. 1432(a) (2003).  If the paternity of the child *had* been established by legitimation, however, then the alien obtained derivative citizenship only if *both* the biological

27   mother and father were naturalized before the child's eighteenth birthday.  *Ibid*.  Petitioner's father was not naturalized.  Therefore, the citizenship claim hinges on whether paternity had been established by legitimation

28   under El Salvadorian law.

**United States District Court**
For the Northern District of California

1    In October 2007, petitioner moved before the BIA to reopen the proceedings claiming

2    ineffective assistance of his two attorneys at each of the two removability proceedings for failing

3    properly to pursue the derivative-citizenship claim.  The BIA granted the motion, vacated its

4    July 2007 decision and remanded the matter to the immigration judge with instructions to address

5    whether a change in El Salvadorian law had affected petitioner's claim to derivative citizenship.[2]

6    In February 2008, as the immigration case was remanded to the immigration judge,

7    petitioner filed this federal petition for writ of habeas corpus to challenge his detention during the

8    pendency of the removal proceedings.  He filed an amended petition in March 2008.  He argued

9    that, because he has raised a "non-frivolous" or "substantive" claim to United States citizenship,

10   ICE had no authority to detain prior to proper adjudication of his *prima facie* citizenship claim.

11   A May 2008 order denied the habeas petition.  It ruled that this Court lacked

12   subject-matter jurisdiction over petitioner's nationality claim.  Under the REAL ID Act of 2005,

13   the federal appellate courts have exclusive jurisdiction over final orders of removal.  Where an

14   individual asserts a claim to United States citizenship, the Act provides that the appellate court

15   shall hear the challenge if it finds that no genuine issues of material fact about the nationality

16   claim exist, but if the appellate court finds a genuine issue of material fact on the issue, it shall

17   transfer the petition to the district court for a new hearing on the nationality issue.  8 U.S.C.

18   1252(b)(5)(A)–(B).  The May 2008 order found that petitioner's citizenship claim was

19   intertwined with the removal proceedings and posed no genuine issues of material fact and,

20   therefore, review thereof was available only via a final order of removal.

21   The Ninth Circuit reversed.  It ruled that district courts do have jurisdiction to hear the

22   merits of the citizenship claim on a habeas petition where it challenges detention pending

23   resolution of removal proceedings, rather than a final order of removal.  It remanded the habeas

24   petition to address petitioner's claim that his detention during the pendency of his removal

25   proceedings was unlawful due to his claim to citizenship.

26

27

28   [2] The BIA instructed the IJ to address "whether article 279 of the Civil Code of El Salvador, which provides a means of legitimation of children born out of wedlock, remains in effect."

4

In the meantime, however, the immigration courts had forged ahead.  During the pendency of the federal appeal, the immigration judge ruled that petitioner did *not* derive United States citizenship from his mother and, just days after the Ninth Circuit issued its order herein, the BIA affirmed that decision.  Flores-Torres appealed this administrative order of removal to the Ninth Circuit.  The Ninth Circuit has stayed its proceedings and has transferred the issue of petitioner's citizenship to the undersigned for fact-finding and decision making.  Thus, this Court now has jurisdiction over two separate but related proceedings: the original habeas claim and the transfer for fact-finding.  These proceedings have been consolidated in this action.

**ANALYSIS**

On November 10, 2008, the Ninth Circuit vacated this Court's prior order of dismissal and remanded the instant habeas corpus proceedings after concluding that habeas jurisdiction existed to review the citizenship claim *during* the pendency of the administrative removal proceedings.  Those proceedings, however, are no longer pending.  The BIA affirmed the IJ decision.  Thus, the central question in this matter is what affect the conclusion of the administrative appeals has on this courts jurisdiction.

**1.    JUDICIAL REVIEW OF FINAL ORDERS BASED ON NATIONALITY CLAIMS.**

Judicial review of final orders of removal is governed by 8 U.S.C. 1252.  Section 1252(b) provides the *exclusive* method for obtaining judicial review of a final order of removal when petitioner is making a nationality claim, such as in this action.  *See* 8 U.S.C. 1252(b)(5)(C) ("stating that petitioner may have [his] nationality claim decided *only* as provided in this paragraph").  Section 1252(b)(5)(A) provides that if a court of appeals finds no genuine issue of material fact from the record, the court shall decide the nationality claim.  Section 1252(b)(5)(B) provides if the court of appeals finds that a genuine issue of material fact exists, the court shall transfer the action to the district court for the judicial district in which petitioner resides.

In this action, the BIA decision is a final order.  In *Iasu v. Smith*, 511 F.3d 881, 884 (9th Cir. 2007), the Ninth Circuit referred to the decision of the immigration courts as the "final order of removal."  Furthermore, the Ninth Circuit has also stated that "[t]he plain language of [Section] 1252(b)(5) requires that upon a petition for review of the *BIA's final order of removal*,

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    we must evaluate a petitioner's claim to United States nationality regardless of whether the claim

2    was raised below." *Theagene v. Gonzales*, 411 F.3d 1107, 1110 (9th Cir. 2005).  Thus, it is clear

3    that Section 1252(b)(5) is applicable in this action since the BIA decision is considered to be a

4    final order.

5            When the Ninth Circuit remanded this habeas action to this Court, it based its decision on

6    the fact that there was *no* final order of removal at that time and held that suspending the habeas

7    proceeding would have constitutional implications.  *Flores-Torrres v. Mukasey*, 548 F.3d 708,

8    711 (9th Cir. 2008).  Subsequent to the remand, however, the BIA affirmed the IJ decision, thus a

9    final order now exists.  The Ninth Circuit has held "that the elimination of habeas jurisdiction to

10   challenge a *final* order of removal is not an unconstitutional suspension of the writ because the

11   INA [,pursuant to Section 1252(b)(5),] provides an adequate substitute by allowing judicial

12   review of the final order of removal through the courts of appeal." *Flores-Torres*, 548 F.3d at

13   713 n.7 (*citing Iasu*, 511 F.3d at 888).  As stated in Section 1252(b)(5)(C), that INA appeals

14   process is the *exclusive* method for resolving nationality claims.  Thus, habeas jurisdiction in this

15   action has evaporated because a final order has now been issued.

16           Petitioner invokes *Rivera v. Ashcroft*, 394 F.3d 1129 (9th Cir. 2004), to argue that even a

17   petitioner who had a final administrative judgement against him was entitled to habeas relief.

18   That decision, however, is distinguishable.  In *Rivera*, the petitioner waived his right to appeal

19   the IJ's ruling and was deported.  The petitioner never exhausted his administrative remedies

20   or pursued an appeal under Section 1252.  In short, the Ninth Circuit held that deporting the

21   petitioner without allowing for any judicial review, would be unconstitutional.  The petitioner

22   had a constitutional right to judicial review via habeas corpus despite waiving his right to appeal

23   and accepting deportation.  394 F.3d at 1137.  By contrast, in the present action, the

24   administrative remedies were exhausted and petitioner appealed pursuant to Section 1252.  As

25   explained above, petitioner's Section 1252 action is an adequate substitute for habeas review and

26   satisfies any constitutional concerns with its suspension.  Thus, *Rivera* does not support

27   petitioner's contention that the citizenship issues must be decided via this habeas action.

28           In sum, petitioner's request for habeas relief on citizenship grounds is **DENIED**.

**United States District Court**
For the Northern District of California

1        **2.**    **PETITIONER'S ARGUMENTS CONCERNING PRECLUSION.**

2        The tentative order denied petitioner's habeas relief on the grounds of issue preclusion.

3    This order, however, does not base its decision on such grounds.  As explained above, this order

4    holds that petitioner will have the right to present his claim of nationality to this Court pursuant

5    to the consolidated citizenship action that was transferred to this court via Section 1252(b)(5), the

6    *exclusive* procedure for dealing with nationality claims.  Thus, petitioner's arguments and cited

7    decisions concerning issue preclusion and the constitutional implications of denying habeas need

8    not be addressed.

9        Furthermore, as previously explained, the Ninth Circuit has held that suspension a habeas

10   claim in such an action is not unconstitutional because a Section 1252 appeal provides an

11   adequate alternative to habeas relief by allowing judicial review of the final order.  *Iasu,* 511 F.3d

12   at 888 (*citing Puri v. Gonzales*, 464 F.3d 1038, 1042 (9th Cir. 2006)).  Petitioner's concerns about

13   the inadequacy of the administrative proceedings will be addressed.  The Ninth Circuit has noted

14   that Section 1252 "[provides] a fail safe against inadvertent or uninformed execution of a final

15   order of removal against a person with a claim to United States nationality." *Theagene*, 411 F.3d

16   at 1110 n.4.  Thus, petitioner will have the opportunity to present his nationality claim, but, this

17   will be pursuant to his Section 1252 citizenship action.[3]

18       **3.**    **BOND HEARING.**

19       Petitioner originally challenged, as part of his habeas action, the legality of his detention

20   without an individualized custody hearing.  As noted by the Ninth Circuit, however, petitioner's

21   challenge is now moot because the IJ held an individualized bond determination hearing.

22   *Flores-Torres*, 548 F.3d at 710 n.3.  "The IJ denied the release from custody, finding that Torres

23   was both a flight risk and a danger to the community.  Torres is now being held under the general

24   detention statute 8 U.S.C. 1226(a)." *Ibid.*  The results of the bond hearing are not subject to

25   judicial review.  *Preito-Romero v. Clark*, 534 F.3d 1053, 1058 (9th Cir. 2008).  Thus, petitioner

26   may not seek a bail hearing as part of his habeas action.  Any new request for a bond hearing,

27   

28       [3] Petitioner's argument concerning mootness is not addressed because this order does not deny habeas relief on the grounds that there is no live case or controversy, but, on the grounds that the consolidated citizenship appeal is the exclusive action to resolve the citizenship claim.

could only be made, if at all, in the Ninth Circuit where his immigration case still resides (with the exception of the citizenship question that has been sent here for factual decision).

### 4.     LEGALITY OF DETENTION.

Petitioner argues that his detention is illegal because he is being detained pursuant to Immigration and Nationality Act that only authorizes the apprehension and detention of aliens. *See* 8 U.S.C. 1226, 1231. Furthermore, petitioner contends that the Non-Detention Act proscribes the federal detention of any kind of United States citizen absent a congressional grant of authority to detain. *See* 18 U.S.C. 4001(a). These arguments, however, only succeed if petitioner is in fact a citizen, a question that will be addressed at the November trial. The court must first find that he is a citizen before the Non-Detention Act is applicable to him. As of now, petitioner has not been found to be a citizen since the BIA affirmed the decision ordering petitioner's removal. Furthermore, in *Flores-Torre*s, the Ninth Circuit held that habeas review may be suspended when a final order is being challenged via Section 1252(b)(5), thus indicating that Flores-Torres, a potential citizen, would remain in detention in such a circumstance. *Id.* at 713 n.7.

Petitioner also argues that the detention of a citizen would permit the executive branch to deprive U.S. citizens of their liberty in violation of the Non-Detention Act. The concern is that if the executive branch has unreviewable authority to detain potential U.S. citizens following an administrative determination that a person is an alien, a person with valid citizenship claim would remain in custody for years until the citizenship claim reaches an Article III court and it declares such a person to be a citizen. The Ninth Circuit held, however, that when someone such as Flores-Torres is being detained *prior to* the issuance of a final removal order, such a person will be granted habeas review. *See Flores-Torres*, 548 F.3d at 713. In such a case, the executive branch's authority would be checked via habeas review. This would prevent a potential citizens from having to wait until the immigration courts rule on the removal before seeking review of the detention.

In this case, however, Flores-Torres has already exhausted his administrative remedies and is already appealing the BIA in this Article III Court. As explained, suspension of the habeas review in such a scenario is not an issue because an Article III court will be reviewing the merits

of the detention.  *See Flores-Torres,* 548 F.3d at 713 n.3.  The check on executive authority is accomplished pursuant to the Article III court appeal.  Thus, petitioner's concerns are unfounded.  Consequently, habeas review in this action is **DENIED** since the detention is legal pursuant to the holding in *Flores-Torres.*[4]

### 5.  RESPONDENTS FAILURE TO DENY FACTS RELATING TO CITIZENSHIP.

Petitioner invokes FRCP 8(b)(6) to argue that since respondents have failed to deny facts underlying petitioner's claims to citizens, those facts should be deemed admitted thereby declaring petitioner a citizen.  *See* FED. R. CIV. PRO. 8(b)(6) (stating that an allegation is admitted if a responsive pleading is required and the allegation is not denied).  As respondent points out, however, the federal rules of civil procedure only apply in habeas cases to the extent that the rules do not conflict with the habeas rules or other statutory provisions.  FED. R. CIV. PRO. 81(a)(4); *see also Mayle v. Felix*, 545 U.S. 644, 654 (2005).   In a habeas action, the respondent is only directed to "make a return certifying the true cause of the detention."  28 U.S.C. 2243.  In respondent's return, in compliance with Section 2243, respondents laid out their arguments supporting their contention that petitioner was legally detained.  Furthermore, respondents repeatedly referred to petitioner as an alien, thereby, implicitly denying any facts petitioner claims support finding petitioner a citizen.  This order does not deem any facts concerning petitioner's citizenship as admitted.  The parties will both have the opportunity to address the merits of that argument via the Section 1252(b)(5) appeals process.

### CONCLUSION

This orders holds that the July 10, order is now **WITHDRAWN**, and that petitioner's request for habeas relief is **DENIED** for the foregoing reasons.  A judgment will not be entered because petitioner's citizenship claim will be adjudicated in the consolidated citizenship appeal transferred to this Court.  With respect to the trial set for November 5, 2009, on the citizenship

---

[4] This order will not address petitioner's arguments concerning the applicable standard to apply during habeas review and will not address petitioner's application of that standard because habeas review has been **DENIED**.  Petitioner had argued that upon habeas review, the court should only look to see if petitioner has a non-frivolous claim as opposed to judging citizenship on the merits.  Petitioner then went through a lengthy discussion of why his claim is not frivolous.

United States District Court

For the Northern District of California

question, counsel should file trial briefs up to 25 pages by **OCTOBER 26, 2009, AT NOON**, with

replies up to fifteen pages by **OCTOBER 29, 2009, AT NOON**.

**IT IS SO ORDERED.**

Dated:  September 29, 2009.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

10